IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEE'S CANDIES INC., a California Corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MCY MULTIDMEDIA ENGINEERS, INC., a California Corporation<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　／ | No. C 05-04079 WHA<br><br>**ORDER GRANTING ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |

## INTRODUCTION

Plaintiff See's Candies, Inc. applies for entry of default judgment against defendant MCY Multimedia Engineers, Inc. pursuant to Federal Rule of Civil Procedure 55, seeking damages, permanent injunction, interest and fees. MCY has never appeared in this action. Review of the *Eitel* factors favors entry of default judgment. Accordingly, plaintiff's application for default judgment and permanent injunction is **GRANTED**, although plaintiff's request for damages and fees is only granted in part as explained herein.

## STATEMENT

On October 12, 2005, plaintiff filed and served the summons and complaint against MCY. The complaint stated claims for trademark infringement under the Lanham Act, breach of contract, fraud, and false and misleading advertising under California Business and Professions Code § 17500.

See's makes candy. MCY makes gift baskets. See's has registered trademarks for both SEE'S CANDY and for SEE'S CANDIES. According to plaintiff, MCY infringed at least two of plaintiff's trademarks by using them beyond the scope of a distributorship agreement entered into by the parties. MCY allegedly represented to See's that it was a not-for-profit entity. On the basis of this misrepresentation, See's authorized MCY to sell See's products for a charitable fundraiser and in certain gift baskets distributed to hotels. All the while, however, defendant purportedly was a for-profit entity that sold its gift baskets to the general public via its website, www.fabiene.com. Defendant advertised on its website that it carried See's products. Defendant also included the See's products in its gift baskets for non-authorized purposes, even after the products' expiration dates.

In addition to violating trademark law, defendant alleged that MCY failed to pay numerous invoices for shipments of See's products. See's shipped its candies to MCY for the charitable fundraiser and the hotel gift baskets. MCY simply never paid. Plaintiff also claimed that defendant's conduct constituted fraud, although plaintiff does not seek relief for fraud on its instant motion. Plaintiff finally alleged that defendant violated California Business and Professions Code § 17500, which prohibits false and misleading advertising practices, by representing on its website that its sales were authorized by See's.

Although plaintiff served the summons and made several further attempts to alert defendant about the pendency of this action, defendant has never responded or appeared in this action. Accordingly, See's filed a request for entry of default. On January 12, 2006, the Clerk of the Court entered default against MCY. In its instant application for entry of default judgment, plaintiff seeks statutory damages under the Lanham Act, contractual damages, prejudgment interest on the contractual damages, post-judgment interest, injunctive relief, and costs and attorney's fees.

**ANALYSIS**

Under Federal Rule of Civil Procedure 55(b)(2), a party can apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a

2

discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors are considered:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). For the following reasons, these factors favor entry of default judgment in this case.

### 1. MERITS OF SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims and the sufficiency of the complaint are thus considered in tandem.

*First*, plaintiff seeks relief under the Lanham Act, 15 U.S.C. 1114(1), for trademark infringement. Under that provision:

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

"The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).

3

Here, accepting plaintiff's allegations as true, defendant sold its gift baskets using See's products and See's name. A reasonable consumer would assume that See's authorized MCY's gift baskets and the products contained therein. That was not the case; the use was unauthorized. Defendant thereby infringed plaintiff's trademarks.

*Second*, plaintiff seeks to recover for breach of contract. This claim is governed by California law. A cause of action for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n. 6 (2004).

See's and MCY had an agreement by which See's would provide its products to MCY for limited purposes. See's delivered the products. MCY failed to pay for the products. Clearly, See's was damaged by this nonpayment.

*Third*, plaintiff claims defendant violated Section 17500 of the California Business and Professions Code, which proscribes false and misleading advertising. That section provides:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

At its essence, the statute "specifically makes unlawful advertising services by 'untrue or misleading' statements." *Brockey v. Moore*, 107 Cal. App. 4th 86, 98 (2003).

4

Here, defendant sold its gift baskets by misleading consumers about its affiliation with See's. According to representations on defendant's website, it was authorized to sell See's products. Accepting the allegations in plaintiff's complaint, those representations were lies.

### 2. THE REMAINING *EITEL* FACTORS.

This order finds that the remaining *Eitel* factors likewise favor entry of default judgment. To deny plaintiff's application would leave plaintiff without a remedy. Morever, defendant has refused to litigate this action here after being properly served with the complaint and summons. Since MCY never filed an answer to the complaint or appeared at the hearing, it is unclear whether there is a possibility of dispute concerning the material facts. There is no evidence that MCY's failure to respond was the result of excusable neglect. Although federal policy may favor a decision on the merits, FRCP 55(b) permits entry of default judgment in situations such as this, where the defendant has refused to litigate. On balance, the Court concludes that the *Eitel* factors weigh in favor of default judgment.

### 3. DETERMINATION OF DAMAGES, INJUNCTIVE RELIEF, FEES AND COSTS.

Plaintiff seeks the following relief: (1) statutory damages of two million dollars for violations of the Lanham Act, (2) contractual damages of $20,798.35, (3) prejudgment interest on the contractual damages totaling $1,559.89, (4) post-judgment interest on the entire judgment, (5) injunctive relief, and (6) attorney's fees totaling $26,625.81 plus costs.

*Statutory Damages under the Lanham Act*: Section 1117(c) of the Lanham Act provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of

5

>goods or services sold, offered for sale, or distributed, as the court considers just.

As one district court noted, "[Section 1117(c)(2)] is a recent addition to the Lanham Act, there is little case law available to assist courts in determining an appropriate award. Consequently, courts faced with determining statutory damages under the Act have analogized to the body of case law interpreting a similar provision in the Copyright Act." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003). "The Supreme Court has held that deterrence of future infringement is an important factor in determining damages under the Copyright Act, and therefore an award of statutory damages need not equal the amount of a plaintiff's actual damages." *Ibid.* (*citing F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)); *see also Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336–37 (9th Cir. 1990).

Here, plaintiff maintains that defendant MCY's violation was egregiously wilful. Plaintiff thus seeks to impose the heightened statutory damages under Section 1117(c)(2) for violation of two separate trademarks for a total of two million dollars.

Certainly, based on plaintiff's allegations, defendant's conduct was wilful. Defendant lied about being a charitable organization to get a contract with See's. Defendant then sold the products it "bought" for purposes other than those authorized under the parties' agreement. MCY even sold these products after they expired. Through it all, defendant never even paid See's for the products received.

Nevertheless, the ends of deterrence are satisfied by an award at the high end of Section 1117(c)(1), and without resort to Section 1117(c)(2). Although the determination of statutory damages is an imprecise science, the case law provides useful guideposts. In *Phillip Morris*, *supra*, the court awarded two million dollars of statutory damages under Section 1117(c)(2). The defendant in that case imported eight million cigarettes with a street value of millions of dollars. A good contrast to *Phillip Morris* is *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 457 (S.D.N.Y. 2005). In *Lorillard*, a suit was brought against a local grocery for the sale of counterfeit cigarettes, of which fifty-two packs were seized. The opinion noted "[w]hile it is likely that Lorillard could establish that defendants' infringement was

6

'willful,' and thus be eligible for enhanced damages, we believe that standard statutory damages will provide sufficient redress and deterrence." The court thus awarded $2,500 for each of five infringed marks.

The scope of the violation here is more similar to *Lorillard* than *Phillip Morris*. Here, defendant's conduct apparently only involved approximately $20,000 worth of candy. Unlike *Lorillard*, the product was sold over the Internet, thus expanding the reach beyond that of a local grocery. Nevertheless, based on the facts alleged, an award of two million dollars seems outrageous.

This order awards plaintiff $100,000. This total includes $50,000 for the violation each of See's separate trademarks. This amount is still at the high end of the scale for Section 1117(c)(1) and is thus sufficient to provide for redress and deterrence. The award though does not completely ignore the scope of the actual damages to plaintiff.

*Contractual Damages*: Plaintiff is entitled to the full $20,798.35 in contractual damages. Plaintiff provided MCY with invoices totaling that amount for products plaintiff delivered. MCY never paid those invoices.

*Prejudgment Interest*: Plaintiff is also entitled to $1,559.89 in prejudgment interest on the contractual damages. This is calculated by reference to the California prejudgment interest rate, which is ten percent per annum under California Civil Procedure Code § 3289(b).

*Post-Judgment Interest*: Plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. 1961. "Under the provisions of 28 U.S.C. 1961, post-judgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994).

*Injunctive Relief*: Plaintiff seeks a permanent injunction prohibiting MCY from its continuing trademark infringement and false and misleading advertising. Under both Section 1116 of the Lanham Act and Section 17500 of the California Business and Professions Code, a plaintiff may receive injunctive relief. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury

7

caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

As of the time of plaintiff's complaint, defendant continued to misrepresent its affiliation with See's on its website. MCY still advertised that See's products and the See's name on the gift-basket website. And most importantly, defendant continued to suggest that See's vouched for the quality of MCY's product. This order, therefore, permanently enjoins defendant from using See's trademarks in any way and from making any statements suggesting that defendant is authorized to sell See's products.

In order for the Court's contempt power to apply to this injunction, however, defendant must "receive actual notice of the order by personal service or otherwise." Fed. R. Civ. Proc. 65(d). Plaintiff is therefore instructed to provide proper service of this order, by personal service to the extent possible, no later than **APRIL 13, 2006**. Plaintiff shall file with the Court a copy of the proof of service.

*Attorney's Fees and Costs*:  Under the Lanham Act, courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a). "[G]enerally, a trademark case is exceptional for purposes of an award of attorney's fees when the infringement is malicious, fraudulent, deliberate, or willful." *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 825–26 (9th Cir. 1997) (internal citation omitted).

As noted above, this order finds that defendant's infringement was wilful. Plaintiff thus is entitled to attorney's fees.

Plaintiff's request for attorney's fees, however, is not adequately accounted for and, in any event seems too high. Plaintiff's counsel merely attests that "I reviewed my firm's bills for this matter. My firm's records indicate that it has billed See's Candies $26,625.61 for its work prosecuting this action to date" (Anderson Decl. ¶ 17). This does not give the billing rates for the attorneys that helped prosecute this matter, nor any identification of how much time was spent on the various tasks yielding that figure. That total, regardless of Mr. Anderson's billing rate, seems high for a default-judgment proceeding. This order accordingly reduces plaintiff's award, granting it $5,000 in attorney's fees.

Plaintiff also requests costs. But plaintiff provides no indication of what costs were incurred. Plaintiff, therefore fails to merit such an award.

**CONCLUSION**

For the foregoing reasons, plaintiff's application for entry of default judgment and permanent injunction is **GRANTED**. Plaintiff is hereby awarded: (i) damages of $100,000 for violation of the Lanham Act, (ii) damages of $20,798.35 for breach of contract, (iii) $1,559.89 in prejudgment interest, (iv) post-judgment interest, (v) a permanent injunction, and (vi) attorney's fees of $5,000.

**IT IS SO ORDERED.**

Dated: April 6, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE